IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:22-CR-0171 |
| Plaintiff, | : | |
| | : | JUDGE BENITA Y. PEARSON |
| -vs- | : | |
| | : | **DEFENDANT JAMES COLBERT'S** |
| JAMES COLBERT, | : | **POST HEARING BRIEF IN SUPPORT** |
| | : | **OF MOTION TO SUPPRESS** |
| Defendant. | : | |

Now comes James Colbert, through counsel, and submits the following Brief in support of his Motion to Suppress. Mr. Colbert submits that the testimony at the hearing held by this Court revealed a lack of reasonable suspicion or probable cause to detain Mr. Colbert and his vehicle, on May 29, 2021.

**I.  Legal Standards for Adjudication of Motions to Suppress**

The Fourth Amendment forbids law enforcement officers from making unreasonable searches and seizures, "and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). The Fourth Amendment's protections are satisfied if the law enforcement officers' actions are "supported by reasonable suspicion to believe that criminal activity 'may be afoot.' " *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Reviewing courts are instructed to look to the totality of the circumstances surrounding the stop to determine whether the officer had a "particularized and objective basis" for suspecting criminal activity. *Arvizu*, 534 U.S. at 266. In evaluating the totality of the circumstances, we will not look at each factor leading to the stop individually; rather, we examine the factors as a whole. *Id.* at

267. We also give "due weight" to the officers' factual inferences, as their specialized training and experiences allow them to draw "inferences from and deductions about the cumulative information available to [them] that 'might well elude an untrained person.' " *United States v. Marxen*, 410 F.3d 326, 331–32 (6th Cir.2005) (quoting *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744).

The Sixth Circuit has also endorsed utilizing a two-part test to determine the legitimacy of an investigatory stop. "First, we must determine if there was a proper basis to stop Mr. Colbert based on the police officers' awareness of specific and articulable facts that give rise to reasonable suspicion. *United States v. Luqman*, 522 F.3d 613, 616-617 (6th Cir. 2008). Second, we evaluate "whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.* Finally, Mr. Colbert notes that this Circuit has determined that "an officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Bailey*, 407 Fed.Appx. 27, 28–29 (6th Cir.2011) (quoting *United States v. Elkins*, 300 F.3d 638, 659 (6th Cir.2002))."

Whether an officer's statements concerning the "odor of burnt marijuana" or the "smell of raw marijuana" is supported by the facts and events of the intrusion is a factual inquiry which is for the district court to resolve. *United States v. Brooks*, 987 F.3d 593, 599 (6th Cir.2021). Mr. Colbert submits that this Court may find that there is little support for the OIU officers' testimony that James Colbert was smoking marijuana during the evening of May 29, 2021, given OIU agents Ford and Mone's testimony concerning the events of May 29, 2021, and thus no support for any intrusion made by the officers against Mr. Colbert.

## II.     Testimony and Evidence Presented at Hearing

Ohio Investigative Unit agent Will Ford testified he was an OIU agent for three years and had no law enforcement experience prior to his OIU position. [Doc.#33, Ford, Supp Hrg. TR at PageID #113]. Agent Ford stated that he was operating in an "undercover" capacity in the parking lot of the Turneytown Shopping Plaza on that evening, from approximately 9:00 p.m. until after midnight. [Doc.#33, Ford, Supp Hrg. TR at PageID #132-133]. Ford testified that he moved around in the parking lot during that period, and eventually parked in the first row of car parking in the part of the Plaza where there were no liquor establishments or permit holders who would be under the jurisdiction of the OIU. While patrons of the permit holding establishments in the area may have used the parking lot spaces associated with Turneytown Plaza, the various establishments across the street from the Plaza have no authority to designate Turneytown Plaza as part of their establishments for parking purposes.

Enforcement Agent Ford also testified that on May 29, 2021 while parked in the first row of vehicular parking nearest to the bank of retail establishments, he observed Mr. Colbert's black Jeep Cherokee SRT park immediately to his right, and thereafter observed the driver light a marijuana cigarette. [Doc.#33, Ford, Supp Hrg. TR at PageID #136, 144]. Enforcement Agent Ford also testified that he was able to lower his passenger window and detect a strong smell of burnt marijuana coming from the partially lowered window of the black Jeep. Ford also testified that this activity took place at "about 11:00 p.m." [Doc.#33, Ford, Supp Hrg. TR at PageID #119-120, 132-133, 139]. Enforcement Agent Ford also testified that he informed his fellow OIU agents he smelled burnt marijuana emanating from the black Jeep, and testified he was able to give a detailed description of the Jeep, identifying it as a "Jeep SRT" with the complete sport package. Enforcement Agent Mone also testified to the extensive description provided by Ford of the vehicle. [Doc.#33, Mone, Supp

Hrg. TR at PageID#166-167]. Enforcement Agent Ford stated that he could not see whether there was anyone in the vehicle other than the driver, as both Ford and the black Jeep had tinted windows and he was not able to see anyone inside the vehicle. [Doc.#33, Ford, Supp Hrg. TR at PageID#124]. Finally, Agent Ford testified and provided visual support for the statement regarding how the other OIU agents entered the Plaza, stating that he was able to watch the OIU vehicle enter the Plaza through the entrance and travel across the large parking lot over to the rear of the black Jeep, which had by that time moved to the exit of the parking lot and was sitting at the traffic light. [Doc.#33, Ford, Supp Hrg. TR at PageID #137-139].

James Colbert submits that this Court may find the agent's testimony not credible. The first discrepancy relates to the place where Agent Ford was purportedly parked, and the viewing of the black Jeep. Mr. Colbert arrived at his place of employment, Phenomenal Barber Salon, by 5:00 pm and parked in front of the shop. [Doc.#33, Colbert, Supp Hrg. TR at PageID #191-192]. Mr. Colbert had appointments until approximately 10:30 p.m. and had not moved his vehicle during that time. Setting aside for the moment Mr. Colbert's testimony regarding his actions once he left the barber salon on the evening of May 29, 2021, if Agent Ford was sitting in the parking space and observed Mr. Colbert pull into the parking space directly adjacent to him, there is no possibility that Agent Ford would have been able to view the details concerning Mr. Colbert's black Jeep to the degree with which he described to his fellow agents. At "around 11:00 pm" the parking lot would have been dark; the agent stated that he had tinted windows and that the car was purportedly close enough for him to detect a "strong odor of burnt marijuana." It is extremely unlikely, no matter how much of a car enthusiast, that Agent Ford would have been able to describe the vehicle with the detail and in the way he did to Agent Mone.

The second inconsistency also relates to testimony which does not rely on Mr. Colbert's testimony to prove its falsehood. Agent Ford was asked whether he was able to see his fellow OIU agents approach the Plaza and enter the parking lot to apprehend Mr. Colbert. Agent Ford stated that the agents entered through the entrance to Turneytown Plaza, which was located east of the one way exit where Mr. Colbert's vehicle was waiting for the light to proceed. Agent Ford stated that he was able to observe the OIU agents' vehicle throughout its progression across the parking lot and was able to draw the vehicle's path of Defendant's Exhibit H, which is the overhead view of a portion of the Plaza's parking and Turney Road. [Doc.#33, Ford, Supp Hrg. TR at PageID #137-139]. However, as this Court was able to observe in the surveillance footage of the detention of Mr. Colbert while sitting at the light at the exit to the Plaza and its intersection with Turney Road, the agent's vehicle, a silver Dodge Durango SUV, was seen entering not through the entrance, but immediately in front of Mr. Colbert's vehicle. [Doc.#33, Colbert & Defendant's Exh. J, Supp Hrg. TR at PageID #206-212]. Agent Mone testified that he was operating a Durango SUV on May 29, 2021, and the agent also testified consistently with Agent Ford, that they entered the parking lot through the entrance. [Doc.#33, Mone, Supp Hrg. TR at PageID #164—166, 187].

These false statements regarding how the agents entered the parking lot may appear merely tangential to whether James Colbert was smoking marijuana after pulling into a parking place next to Agent Ford. However, Mr. Colbert submits that it shows a concerted effort to coordinate a story, and also shows that the agents are willing to misrepresent facts, under oath to this Court, leading to the crux of the issue as to whether the all too ubiquitous "odor of marijuana" was also a manufactured, coordinated story to justify a stop without reasonable suspicion or probable cause.

Agent Ford's rendition of the events of May 29, 2021 around 11:00 pm are also suspect given Mr. Colbert's testimony regarding his actions on that date. James Colbert testified that he did not

move his vehicle between the time he parked and went to his job at Phenomenal Barber Salon for his 5:00 pm appointment. [Doc.#33, Colbert, Supp Hrg. TR at PageID #191-192].  Mr. Colbert also testified that he and his brothers had earlier in the day gone to Detroit, Michigan to a marijuana dispensary, where they purchased packaged marijuana and edibles. [Doc.#33,Colbert, Supp Hrg. TR at PageID #221-222].  There was no loose, raw marijuana outside of the packaging and Mr. Colbert testified that their purchases were also contained in a backpack in the rear of Mr. Colbert's Jeep, rendering Agent Mone's testimony regarding the "overwhelming" smell of "raw marijuana" prior to his entry and search of the vehicle suspect. [Doc.#33, Mone, Supp Hrg. TR at PageID #155, 158].

Agent Ford testified that he was parked in the parking space and Mr. Colbert and his Jeep pulled in next to him.  However, Mr. Colbert submits that he had not moved his vehicle since his arrival for his 5:00 pm appointment and was in fact sitting in his vehicle between 10:45 pm and 11:00 pm waiting for a friend to arrive. While waiting, Mr. Colbert testified that he was sitting with his door wide open and that there could not have been a car parked directly to his left, as the parking spaces are narrow, and no car was parked next to him which would have enabled him to leave his door open on the warm spring evening. [Doc.#33, Colbert, Supp Hrg. TR at PageID #195-197, 215-216]. Therefore, given the testimony of Agent Ford, who was able to provide a detailed description of a vehicle which had just pulled up next to him, juxtaposed with the testimony of Mr. Colbert, who works in the barber shop in the Plaza, who was parked in the location and sitting in his car waiting for a friend, defendant states that the events as described by Mr. Colbert are clearly more reliable than those provided by Agent Ford. It would make no sense for Mr. Colbert to pull into a parking spot at that location directly in front of his place of employment, at 11:00 pm, after being present at the salon since 5:00 pm, with his car parked there. Regardless of how long Mr. Colbert sat in his vehicle, what is clear is that Agent Ford's testimony that Mr. Colbert pulled into the parking lot at "around 11:00 pm," is not credible.

Considering all the testimony in the light most favorable to the United States, the agents who testified in support of reasonable suspicion of marijuana smoking were not credible. Mr. Colbert submits that he was not smoking marijuana on the evening of May 29, 2021 and was instead smoking the Black and Mild cigar. Because Agent Ford was not credible in his testimony concerning the location of Mr. Colbert's vehicle, not credible regarding how he was able to observe the details of the vehicle's type through a tinted window with the vehicle pulling into park immediately next to him, and not credible in the description of the route that the officers took to effect the stop, James Colbert submits that none of the testimony provided by Agent Ford is supported by readily provable facts and circumstances.

Additionally, Agent Mone provided false testimony regarding the smell of "a cloud" of marijuana and raw marijuana. [Doc.#33, Mone, Supp Hrg. TR at PageID #169]. Defendant submits that had there been a "cloud" of burnt marijuana as the agents approached Mr. Colbert's vehicle, there would have been some evidence of actual burning marijuana: a pipe, a blunt, or a cigarette. Here, Agent Mone testified that Mr. Colbert was not smoking at the time he was removed from the vehicle. No burnt marijuana, pipe, blunt, roach or any other item indicative of recently smoked marijuana was seized as evidence by the agents. [Doc.#33, Mone, Supp Hrg. TR at PageID #169, 186].

### III.     Conclusion

James Colbert submits that there were many false statements made by the officers under oath before this Court, and those false statements reflect the officers attempt to justify a stop and search which was not supported by reasonable suspicion or probable cause. Based upon the testimony provided at the hearing, this Court may find that the Ohio Investigating Unit officers conducted a stop and seizure of Mr. Colbert without reasonable suspicion or probable cause to do so, and all evidence seized thereafter should be suppressed.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

s/ *JACQUELINE A. JOHNSON*
First Assistant
Federal Public Defender
Ohio Bar: 0025606
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 (o); (216) 522-4321 (f)
(jacqueline_johnson@fd.org)

s/ *Vanessa Malone*
Attorney at Law (OH 0066230)
Office of the Federal Public Defender
50 South Main St., Ste. 700
Akron, OH 44308
330-375-5739
vanessa_malone@fd.org